IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAUDHY M. BLISS, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:22-cv-563 (PTG/IDD) |
| ) | |
| MERRICK B. GARLAND, Attorney General ) | |
| of the United States, ) | |
| ) | |
| *Defendant.* ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 54. In her Third Amended Complaint, Plaintiff brings two claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17: (1) a disparate treatment claim on account of Plaintiff's sex, color, and national origin (Count One);[1] and (2) a hostile work environment claim on account of Plaintiff's sex, color, and national origin (Count Two). Dkt. 53 ¶¶ 105–45. Plaintiff, who is female and of Hispanic descent, was a Drug Enforcement Agency ("DEA") Basic Agent Trainee ("BAT"). *Id.* ¶ 1. After being removed from the training academy and ultimately terminated from the DEA, Plaintiff filed suit alleging that her "termination resulted from the discriminatory conduct of" training academy personnel, and that "Defendant has allowed a course

---

[1] While Plaintiff at times discusses "discrimination based on . . . race" in the Complaint, Dkt. 53 ¶ 23; *see also id.* ¶¶ 13, 33, 115, 136, Plaintiff alleges that her formal administrative complaint with the Equal Employment Opportunity Commission ("EEOC") alleged "discrimination and a hostile work environment based on color, sex, and national origin." *Id.* ¶ 98; *see also id.* ¶¶ 21–22. Thus, the Court will only address Plaintiff's claims on the bases of color, sex, and national origin.

1

of conduct which results in disparate treatment for individuals who are female, brown skin and of Hispanic national origin." *Id.* ¶¶ 114–15. Plaintiff alleges that she was "subjected to severe and pervasive harassment" by Responsible Management Officials ("RMOs") and DEA employees during her training. *Id.* ¶ 127.

Plaintiff alleges that, from the time she reported to Quantico for training on April 28, 2019 until her removal from the DEA training academy on July 29, 2019, she was subject to discrimination and a hostile work environment based on her sex, color, and national origin. *Id.* ¶ 13. Plaintiff challenges her dismissal from the DEA training academy and ultimate termination from employment with the DEA. *Id.* ¶¶ 16–17.

## I. FACTUAL BACKGROUND

In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts the facts in the complaint as true and construes them in the light most favorable to the plaintiff. *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 155 (4th Cir. 2022), *cert. denied sub nom. Tabb v. Durham Pub. Sch. Bd. of Educ.*, 143 S. Ct. 104 (2022). For purposes of this motion, the facts are as follows:

On April 28, 2019, Plaintiff commenced her DEA Basic Agent Training at the DEA training academy in Quantico, Virginia. Dkt. 53 ¶¶ 1, 6. On June 6, 2019, Plaintiff and other BATs participated in a sparring session in which each BAT had to spar with another BAT. *Id.* ¶ 34. Special Agent ("SA") Nicholas Macri ("SA Macri") directed Plaintiff to only spar with male BATs whereas three white female BATs, Barnes, Podesto, and Scott, were allowed to spar with other females. *Id.* Plaintiff was paired with a white male, BAT Buechner. *Id.* As Plaintiff and BAT Buechner sparred, Plaintiff had difficulty breathing "due to the punches to her face and stomach" and informed SA Carl Johnson ("SA Johnson"), who was watching, that she could not breathe. *Id.* SA Johnson replied to Plaintiff, "I don't give a f-------k" and instructed BAT Buechner

2

to "f— [Plaintiff] up." *Id.* When Plaintiff asked BAT Buechner "to slow down[,]" SA Johnson instructed BAT Buechner "to mess [Plaintiff] up in foul language or BAT Buechner would have a problem with SA Johnson." *Id.* Plaintiff then informed SA Johnson that she could not breathe, but he responded with foul language. *Id.* Ultimately, Plaintiff had to spar with three other male BATs, Banas, Akins, and Baez, "all of whom were told not to take it easy on [] Plaintiff." *Id.* Plaintiff was never allowed to fight or spar with another female. *Id.* ¶ 35.

On July 16, 2019, RMO SA John Nolan ("SA Nolan") oversaw a group of BATs, which included Plaintiff, during firearms training. *Id.* ¶ 43. Plaintiff was asked to use a device that recorded the time when a weapon was fired. *Id.* Because she was unfamiliar with the device, BAT Baez, who was also Hispanic, "provide[d] a short explanation to Plaintiff in Spanish . . . to which she responded in Spanish." *Id.* ¶ 44. SA Nolan said, "Don't speak Spanish, we are in the United States." *Id.* ¶ 45. BAT Baez spoke to a DEA employee, Counselor Hamelin, about the incident. *Id.* ¶ 46.[2] Counselor Hamelin informed BAT Baez "that the DEA does not have a policy regarding the use of a familiar language other than English in any situation." *Id.*

On July 22, 2019, during defensive tactics physical exercises, Plaintiff was paired with a male, BAT Reyes, for an exercise that required Plaintiff to drag BAT Reyes the distance of a basketball court without assistance. *Id.* ¶¶ 47–48. The exercise was challenging for Plaintiff because BAT Reyes weighed 235 pounds and wore a twenty-five-pound vest. *Id.* ¶ 48. SAs Macri and Johnson, who were overseeing the exercises, "scream[ed] at [] Plaintiff in an aggressive manner in front of the whole class," saying, "hurry the f--- up," "you should f---ing quit," "you are a loser," "you are not meant for this," and "you just killed your f---ing partner." *Id.* ¶ 49.

---

[2] Counselor Hamelin's first name is not included in the Third Amended Complaint.

3

Plaintiff alleges that SAs Johnson and Macri did not treat other BATs in a similar manner during the exercise. *Id.* ¶ 52.

In July 2019, during Raid Exercise #5, SA Macri penalized Plaintiff for not "checking the door." *Id.* ¶ 56. Plaintiff was not allowed to explain her actions to SA Macri, but other BATs were allowed to explain their actions. *Id.* ¶¶ 56–57. Plaintiff was told that if she made another mistake, she would fail an upcoming Raid Exercise. *Id.* ¶ 58. White BATs "made the same mistakes or more fatal mistakes," including not engaging, using excessive force, shooting or killing an innocent person, or causing a partner's death, and were not penalized or told they would fail. *Id.* For example, in another exercise, a white female, BAT Barnes, "was unable to properly handcuff a subject," but was not told she would fail upcoming Raid Exercises. *Id.* ¶ 42.

In July 2019, during Raid Exercise #6, DEA training personnel "alleged that [] Plaintiff made mistakes that were sufficient to fail her." *Id.* ¶ 60. In particular, SA Macri added false and inaccurate information to the Basic Agent Trainee Notice of Failure ("BATNAF") form, which documented Plaintiff's failure of Raid Exercise #6. *Id.* Plaintiff was not allowed to explain the actions she took during Raid Exercise #6, but other BATs were allowed to do so. *Id.* ¶ 61. SA Macri also used "foul and offensive language" when commenting on Plaintiff's performance during Raid Exercise #6. *Id.* ¶ 62. After Raid Exercise #6, Plaintiff asked SA Starmer[3] for assistance in practicing exercises. *Id.* ¶ 64. After practicing exercises together, SA Starmer affirmed that Plaintiff was performing the exercises as required. *Id.* ¶¶ 65, 89. In comparison, a white female, BAT Soebbing, "shot an innocent person and [] was told that in real life she

---

[3] Plaintiff refers to this Special Agent as both "SA Starmer" and "SA Stramer." Dkt. 53 ¶¶ 64–65, 89. For consistency's sake, the Court will refer to this individual as "SA Starmer." SA Starmer's first name is not included in the Third Amended Complaint.

4

committed a murder" during Raid Exercise #6. *Id.* ¶ 72. BAT Soebbing received a BATNAF form stating that she needed improvement, but she was not failed. *Id.*

During Raid Exercise #7, a white male, BAT Banas, made a mistake that resulted in the "death" of his team. *Id.* ¶ 67. The DEA instructors did not acknowledge BAT Banas' "serious mistake[.]" *Id.* However, during Raid Exercise #7, SA Macri criticized the way Plaintiff placed a suspect in handcuffs. *Id.* ¶ 68.

During defensive tactics physical exercises, during which the BATs were performing push-ups and sit-ups, DEA training personnel, SAs Timothy Menino ("SA Menino"), Macri, and Johnson, "directed profanity" towards Plaintiff for not properly performing the exercises. *Id.* ¶ 37. Two white females, BATs Barnes and Podesto, were not performing the exercises properly, but were not disciplined or criticized. *Id.* In a similar incident during which BATs were performing planks and push-ups, SA Menino "scream[ed] at Plaintiff for no reason," but did not discipline or criticize BAT Barnes, who was "resting" instead of performing exercises. *Id.* ¶ 39. In another similar instance, SA Menino called Plaintiff to the front of the class where she was "ridiculed, cursed at and screamed at . . . for allegedly not doing [] pushups," whereas two white females, BATs Podesto and Barnes, and some white male BATs were not disciplined, even though they would rest in between exercises. *Id.* ¶ 40.

On one occasion, BATs were practicing "taking each other down to the floor." *Id.* ¶ 41. Plaintiff was practicing with BAT Podesto. *Id.* SA Menino "exhibited dissatisfaction" with Plaintiff and asked her to repeat the exercise five times more than BAT Podesto, who only had to do the exercise once. *Id.* SA Menino informed BAT Podesto that she did a good job on the exercise, but "shook his head at Plaintiff . . . and walked away[,]" even though Plaintiff and BAT Podesto performed the exercise in the same way. *Id.*

5

During a vehicle containment exercise, a white male, BAT Banas, pointed a firearm at another BAT. *Id.* ¶ 69. DEA training personnel did not inform BAT Banas that he would fail Raid Exercises if he made another mistake. *Id.* BAT Banas "made numerous mistakes throughout [R]aids [E]xercises, some fatal, and he was not failed." *Id.*

During another vehicle containment exercise, SA Menino "mocked" Plaintiff in front of others when she said, "[c]lear" after clearing the trunk of a vehicle. *Id.* ¶ 71. SA Menino stated that Plaintiff was supposed to say, "trunk clear." *Id.* After the exercise, two white males, BATs Akin and Bolton, informed Plaintiff that they did not know why SA Menino criticized Plaintiff because they both had always said "clear" instead of "trunk clear." *Id.*

At various times throughout the training, Plaintiff "was told she was a cheater, a loser, called a f--- up, [and] asked if she was retarded." *Id.* ¶ 36.

On July 26, 2019, during Raid Exercise #8, Plaintiff was the team leader of one of the groups. *Id.* ¶ 74. SA Johnson "mocked" Plaintiff as she presented her initial briefing. *Id.* SA Bellamy did not allow Plaintiff to complete her briefing after she "stumbled on a couple of names" and "corrected herself." *Id.*[4] SA Bellamy had a white female, BAT Barnes, continue the briefing. *Id.* During the exercise, Plaintiff acted as part of a rescue team entering a barricaded house to rescue an undercover agent. *Id.* ¶ 77. While in the house, "Plaintiff looked toward the door she had entered to see if anyone was coming in[.]" *Id.* At that moment, Sergeant Case, a DEA instructor, shot Plaintiff in the head with one round of simulated ammunition. *Id.* ¶¶ 14, 77.[5] Plaintiff "shot back with her left hand so as not to expose her entire body and to protect herself." *Id.* ¶ 77. Raid Exercise #8 ended shortly thereafter. *Id.* ¶ 78.

---

[4] SA Bellamy's first name is not included in the Third Amended Complaint.

[5] Sergeant Case's first name is not included in the Third Amended Complaint.

6

Plaintiff "suffered a head injury and was bleeding from a wound caused by [a] simulation round fired by [Sergeant Case.]" *Id.* ¶ 14. DEA training personnel, including Unit Chief James De Leo ("Chief De Leo"), SA Menino, and SA Macri, "failed to properly address [her] injury or [her] medical condition[.]" *Id.* ¶¶ 14, 82–83. Per DEA training requirements, DEA training personnel are required to refer a BAT who is injured during a training exercise to the DEA Health Services Unit for medical consultation, which did not occur. *Id.* DEA training personnel failed to file the proper documentation to report Plaintiff's injury or assist Plaintiff in reporting her injury after Raid Exercise #8. *Id.* After she was injured, SA Macri "counsell[ed]" Plaintiff and "told her that shooting with her left hand is unsafe" and SA Bellamy laughed at her. *Id.* ¶¶ 70, 79, 86. Chief De Leo told Plaintiff that "maybe she was not meant to be an agent but a model, and she could walk showing off the round damage to her forehead." *Id.* ¶ 80. After the injury, Plaintiff experienced nausea, vomiting, and "a nonstop headache" but was not treated. *Id.*

SA Macri later "added false deficiencies to [Plaintiff's Raid Exercise #8] evaluation[,]" "told her it was unsafe to use her left hand to shoot and used that fact as an element to fail [] Plaintiff" in Raid Exercise #8. *Id.* ¶ 82. SA Macri also stated that Plaintiff failed Raid Exercise #8 because she "did not complete the exercise." *Id.* ¶ 87. Plaintiff's head injury was not considered in her Raid Exercise #8 evaluation. *Id.* A firearms instructor confirmed that utilizing only the left hand to shoot "was not a safety issue." *Id.* ¶ 82.

Other BATs who were in the same training class as Plaintiff and who suffered injuries during training exercises received immediate medical assistance. *Id.* ¶ 15. For example, during another vehicle containment exercise, a white female, BAT Soebbing, was injured. *Id.* ¶ 70. SA Macri immediately took BAT Soebbing to the clinic. *Id.*

On July 29, 2019, Plaintiff was dismissed from the DEA training facility for "alleged combined failures," in particular, for failing Raid Exercises #6 and #8. *Id.* ¶¶ 13, 16, 87. Plaintiff alleges that the evaluations that were the basis of her dismissal from the training academy were "biased, inaccurate, and . . . false." *Id.* ¶ 87. From July 30, 2019 to December 6, 2019, Plaintiff was assigned to the DEA's Orlando District Office, where she performed "perfunctory duties[.]" *Id.* ¶¶ 17, 94. Plaintiff was diagnosed with a concussion shortly after Plaintiff's arrival at the Orlando District Office. *Id.* ¶ 95.

On September 17, 2019, Plaintiff's attorney sent a letter to the DEA's Acting Administrator, Uttam Dhillon, seeking resolution of Plaintiff's employment status and describing the mistreatment Plaintiff had experienced. *Id.* ¶ 97. Acting Administrator Dhillon did not respond to the letter. *Id.* On September 21, 2019, Plaintiff filed her formal Equal Employment Opportunity ("EEO") complaint of "discrimination based on color (Brown), sex (female) and national origin (Hispanic-Puerto Rican)" and hostile work environment. *Id.* ¶¶ 21–22; *see also id.* ¶ 98. On July 21, 2020, Plaintiff requested a hearing before the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 10–11. On December 5, 2019, Plaintiff was informed via letter that she was terminated from the DEA, effective December 6, 2019. *Id.* ¶¶ 17, 100.

Plaintiff filed the original complaint on March 11, 2022. Dkt. 1. The case was transferred from the U.S. District Court for the Middle District of Florida on May 18, 2022. Dkt. 16. Plaintiff filed the Third Amended Complaint in the U.S. District Court for the Eastern District of Virginia on November 25, 2022. Dkt. 53.

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

8

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility requirement mandates that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (citing *Iqbal*, 556 U.S. at 679 and *Twombly*, 550 U.S. at 557).

The complaint must present "'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), then quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 253 (4th Cir. 2009)).

### III. ANALYSIS

Plaintiff asserts claims of disparate treatment, Dkt. 53 ¶¶ 105–23, and hostile work environment, *id.* ¶¶ 124–45, "on the basis of her sex, her color, and her national origin[,]" *id.* ¶¶ 107–08, 126. The Court treats the disparate treatment claim on the bases of sex, color, and national origin "in tandem" because Plaintiff appears to allege an intersectional claim on all three protected bases. *Westmoreland v. Prince George's Cnty.*, 876 F. Supp. 2d 594, 603–04 (D. Md. 2012) (treating the plaintiff's sex and racial discrimination claims "in tandem" because the plaintiff

was discriminated against "as an African-American female"). The same is true for Plaintiff's hostile work environment claim.

"Intersectionality theory posits that individuals have multiple identities that are not addressed by legal doctrines based solely on a single identity or status." *Id.* at 604 (quoting Dianne Avery et al., Employment Discrimination Law 47 (8th ed. 2010) ("Employment Discrimination Law")). "[S]ome cases present evidence that points to discrimination occurring not only because of the plaintiff's sex, but because of both sex and some other characteristic." *Id.* (quoting Avery et al., Employment Discrimination Law at 352). The EEOC has also issued guidance concerning "intersectional discrimination[,]" stating:

> Title VII prohibits discrimination not just because of one protected trait (e.g., race), but also because of the intersection of two or more protected bases (e.g., race and sex). For example, Title VII prohibits discrimination against African American women even if the employer does not discriminate against White women or African American men.

U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2006-1, EEOC Compliance Manual: Section 15 Race and Color Discrimination (2006).

"Although the Fourth Circuit has yet to answer this question [of whether plaintiffs may assert intersectional claims under Title VII], '[s]everal courts have been willing to embrace intersectionality theory in Title VII cases.'" *Westmoreland*, 876 F. Supp. 2d at 604 (alteration in original) (citing *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 337 n.4 (4th Cir. 2010) and quoting Avery et al., Employment Discrimination Law at 47); *see, e.g., Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (finding that the district court improperly failed to address the plaintiff's claim of discrimination on the basis of both race and sex); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1561–62 (9th Cir. 1994) (holding "that, when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the

basis of that *combination* of factors" because "bisect[ing] a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences"); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987) (finding that aggregating evidence of racial hostility with evidence of sexual hostility is permissible to determine the pervasiveness of the alleged harassment).

In this case, Plaintiff consistently contends that she was discriminated against as a Hispanic female. Dkt. 53 ¶ 115 ("female, brown skin and of Hispanic national origin"), *see also id.* ¶¶ 22–23, 70, 90, 116, 136–37. Thus, the Court finds it proper to treat Plaintiff's disparate treatment claim on the bases of sex, color, and national origin and the hostile work environment claim on the bases of sex, color, and national origin in tandem, as one individual claim each.

Defendant argues that both the disparate treatment claim and the hostile work environment claim should be dismissed because Plaintiff has failed to state a claim. Dkt. 55 at 6, 12.

### a. Plaintiff Sufficiently Alleges a Disparate Treatment Claim Based on Sex, Color, and National Origin

Defendant argues that Plaintiff fails to state a disparate treatment claim because Plaintiff's allegations "lack . . . discriminatory animus" and her allegations concerning comparators are not "sufficiently detailed." *Id.* at 7, 10.

Under 42 U.S.C. § 2000e-16(a), "[a]ll personnel actions" affecting federal employees "shall be made free from any discrimination based on [] color, [] sex, or national origin." While a plaintiff is not required to plead facts that constitute a *prima facie* case to survive a motion to dismiss, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)), factual allegations must be enough "to raise a right to relief above the speculative level[,]" *id.* (quoting *Twombly*, 550 U.S. at 555).

11

To allege disparate treatment, absent direct evidence of animus, a plaintiff must plead: "(1) his membership in a protected class; (2) his satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment." *Tabb*, 29 F.4th at 157.

Plaintiff has alleged facts sufficient to support a reasonable inference that Defendant's actions—deeming Plaintiff's performances during multiple Raid Exercises as failures, dismissing Plaintiff from the DEA training academy, and terminating Plaintiff's employment with the DEA—were taken because of Plaintiff's color, sex, and national origin.

Regarding the first element, Plaintiff alleges membership in protected classes because she is brown, female, and "Hispanic-Puerto Rican." Dkt. 53 ¶ 22.

Regarding the second element, Plaintiff alleges that, outside of Plaintiff's alleged Raid Exercise failures, which Plaintiff asserts were "biased" and "inaccurate," *id.* ¶ 87, Plaintiff's performance was satisfactory, *id.* ¶¶ 65, 71, 82, 89. Defendant maintains that Plaintiff "did not and could not meet the performance standards required[,]" Dkt. 55 at 10; *see* Dkt. 67 at 4, but does not directly argue that Plaintiff fails to allege she satisfactorily performed at her job.

Regarding the third element, Defendant concedes that Plaintiff's dismissal from the DEA training academy and termination from the DEA both qualify as adverse employment actions. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) ("An adverse action is one that 'constitutes a significant change in employment status, such as . . . firing, failing to promote, [or] reassignment with significantly different responsibilities[.]'" (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998))). Thus, Defendant only contests Plaintiff's allegations concerning the fourth element, regarding similarly situated comparators.

If a plaintiff pleads that similarly situated employees outside of her protected classes received more favorable treatment (i.e., pleading a comparator), as Plaintiff does here, she must allege a comparator who is "similar in all relevant respects[,]" meaning they had the "same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (alteration in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). In the context of a motion to dismiss, "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons" are "generally" not appropriate, but "typically occur[] in the context of establishing a *prima facie* case of discrimination[.]" *Woods v. City of Greensboro*, 855 F.3d 639, 650–51 (4th Cir. 2017) (citing *Swierkiewicz*, 534 U.S. at 514 and *Haywood*, 387 F. App'x at 358–59).

At this stage of the litigation, the Court finds that Plaintiff has met the *Haywood* standard for alleging similarly situated comparators. Plaintiff demonstrates that fellow BATs at the DEA training academy were similarly situated because they had "the same instructors . . . the same physical requirements, the same academic requirements, the same firearm requirements, the same sleeping facilities, the same meal regimen, and same dress code." Dkt. 53 ¶ 13. Plaintiff has thus alleged that BATs in her DEA training course qualify as similarly situated comparators. Plaintiff sufficiently alleges that non-brown, non-Hispanic male BATs and female BATs received more favorable treatment than she did at the DEA training academy. Specifically, Plaintiff alleges that DEA instructors dismissed Plaintiff from the DEA training academy for "fail[ing] to meet the training criteria" due to mistakes she made during two Raid Exercises. *Id.* ¶ 16. When similarly situated non-brown, non-Hispanic male BATs and female BATs made similar or more fatal

mistakes, however, they did not fail exercises nor were they penalized but were instead encouraged to practice more to perform exercises correctly. *Id.* ¶¶ 42, 58, 67, 69, 72.

Defendant's cited case law discussing alleged comparators is not analogous to the case at hand. Dkt. 55 at 9. In *Coleman v. Maryland Court of Appeals*, the court affirmed the dismissal of the plaintiff's disparate treatment claim because the plaintiff "fail[ed] to establish a plausible basis for believing [that two individuals] were actually similarly situated or that race was the true basis for [the plaintiff's] termination." 626 F.3d 187, 191 (4th Cir. 2010). In *Coleman*, the plaintiff's two proffered comparators failed to meet the *Haywood* standard. *Id.* One individual was alleged to be the plaintiff's supervisor, *see id.* at 189, and thus could not have had the "same supervisor" nor be "subject to the same standards" as the plaintiff, *Haywood*, 387 F. App'x at 359. The plaintiff failed to allege the other individual's race. *See Coleman*, 626 F.3d at 189. These alleged comparators are thus demonstrably different from Plaintiff's comparators, who are BATs in the same DEA training class as herself and are non-Hispanic and, in some instances, not women. Dkt. 53 ¶¶ 42, 58, 67, 69, 72. For a disparate treatment claim on the bases of sex, color, and national origin, then, Plaintiff has plausibly pleaded similarly situated comparators.

Defendant's argument that Plaintiff's disparate treatment claim on the bases of color, sex, and national origin must be dismissed because "there are no allegations that a non-Brown, non-Hispanic, male BAT who failed two Raids exercises was permitted to remain in *both* the training academy and the DEA[,]" Dkt. 55 at 10, presents far too narrow a reading of the Fourth Circuit's decision in *Tabb v. Board of Education of Durham Public Schools*, 29 F.4th 148 (4th Cir. 2022), and fails to understand the basis of Plaintiff's claim. In *Tabb*, the Fourth Circuit affirmed the district court's ruling that the plaintiff had not plausibly alleged a similarly situated comparator because he had not alleged that a white theater director was paid a technical supplement, where

14

the plaintiff's alleged adverse action was the lack of receipt of a technical supplement. *Id.* at 153–54.

Here, unlike in *Tabb*, Plaintiff is not simply alleging that she was dismissed from the DEA training academy and terminated where other BATs were not. Instead, she is alleging that the basis of her dismissal and termination, the alleged failures of Raid Exercises #6 and #8, were "biased, inaccurate, and . . . false." Dkt. 53 ¶ 87; *see also id.* ¶¶ 13, 16, 60, 74, 82, 108, 114. In other words, Plaintiff is alleging that her dismissal and ultimate termination were based on sham allegations of mistakes Plaintiff made during Raid Exercises.

Plaintiff's Complaint includes multiple references to individual similarly situated comparators with detailed accounts of alleged disparate treatment. *Id.* ¶¶ 42, 58, 67, 69, 72. Specifically, Plaintiff alleges that BAT Barnes, a white female, "made many mistakes on raids training," but was not failed and "was not told she would fail raids, unlike . . . Plaintiff." *Id.* ¶ 42. In addition, BAT Banas, a white male, made a mistake during Raid Exercise #5, but was not reprimanded or warned, unlike Plaintiff. *Id.* ¶ 67. Plaintiff alleges that BAT Banas "made numerous mistakes throughout raids exercises, some fatal, and he was not failed." *Id.* ¶ 69. In yet another example, BAT Soebbing, a white female, "shot an innocent person" during Raid Exercise #6 but was told by DEA training personnel that "she would not be failed and [they] did not fail her." *Id.* ¶ 72. By alleging that non-brown, non-Hispanic male BATs and female BATs made "similar mistakes or more fatal mistakes" than she, but were not penalized or evaluated as failing Raid Exercises, *id.* ¶ 58, Plaintiff has sufficiently pled similarly situated comparators who are "similar in all relevant respects," *Haywood*, 387 F. App'x at 359. Thus, the Court denies Defendant's Motion to Dismiss Plaintiff's disparate treatment claim on the bases of color, sex, and national origin.

### b. Plaintiff Fails to Allege a Hostile Work Environment Claim

To establish a hostile work environment claim, a plaintiff must allege that conduct was (1) "unwelcome;" (2) based on a protected class; (3) "'sufficiently severe or pervasive' to alter the conditions of her employment;" and (4) "imputable to her employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc)). Defendant argues that Plaintiff's hostile work environment claim fails because (1) she fails to allege any nexus between her alleged mistreatment and her protected classes; and (2) she does not sufficiently allege severe or pervasive conduct in the context of a law enforcement training academy. Dkt. 55 at 12. The Court agrees with Defendant that Plaintiff fails to sufficiently allege conduct that was severe or pervasive.

When considering whether a plaintiff has alleged sufficient facts to state a hostile work environment claim, a court will consider "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). The Fourth Circuit has "recognized that plaintiffs must clear a high bar . . . to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than . . . 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable[.]" *Id.* at 315–16 (first quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), then quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

Plaintiff relies on essentially the same allegations for the hostile work environment claim as for the disparate treatment claim. Plaintiff alleges instances of name-calling, Dkt. 53 ¶ 36, profanity, *id.* ¶¶ 37, 49, and being "ridiculed" and laughed at by her supervisors, *id.* ¶¶ 40, 70–72, often in front of fellow BATs. In one instance, a supervisor added false information to an evaluation form. *Id.* ¶¶ 60, 82. She also alleges that her supervisors required her to repeat training exercises more than others, *id.* ¶ 41, and to perform training exercises with male counterparts, *id.* ¶ 34. Although the Court finds that these allegations are sufficient to allege a disparate treatment claim, the same allegations "repackage[ed]" do not necessarily indicate a plausible hostile work environment claim. *See, e.g.*, *Robinson v. Austin*, 602 F. Supp. 3d 825, 835 (D. Md. 2022) (holding that the plaintiff's allegations were sufficient to state a discrimination claim on the bases of race and gender but insufficient to state a hostile work environment claim because a hostile work environment claim requires a plaintiff to "allege more than subtle slights").

Defendant cites several cases from the Fourth Circuit and this Court in which the alleged conduct, which was as extreme or more extreme than Plaintiff's factual allegations, was not found to be sufficiently "severe or pervasive" to state a hostile work environment claim. *See, e.g.*, *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (affirming dismissal of a hostile work environment claim in which a plaintiff alleged that her supervisor yelled at her in a meeting, yelled and pounded her hands on a desk during another meeting, "repeatedly harp[ed] on a mistake" the plaintiff had made, made snide comments to the plaintiff, played favorites and pitted employees against one another, and unfairly scrutinized and criticized the plaintiff on various issues); *Bass*, 324 F.3d at 765 (affirming dismissal of a hostile work environment claim and summarizing the plaintiff's allegations as those "of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors"); *Dumbaugh v. Univ. of*

*Richmond*, No. 3:19-cv-57, 2019 WL 4307872, at *3 (E.D. Va. Sept. 11, 2019) (stating that the alleged "unwelcome conduct" amounted to "offensive and insulting comments[,]" "unfair and public criticism[,]" and reassignment of tasks that did "not give rise to an actionable hostile work environment claim"); *Blanding v. Hayden*, No. 08-00314, 2008 WL 4774365, at *4 (E.D. Va. Oct. 24, 2008) (describing the conduct related to the hostile work environment claim as "rude treatment from [] co-workers and a harsh supervisor" that did not "rise to the level of severe or pervasive treatment required to support a claim of hostile work environment"). The Court finds this case law persuasive on the issue of whether Plaintiff sufficiently alleges severe or pervasive conduct.

The Court appreciates that the DEA training academy's tough and demanding setting is designed to train future DEA agents, and thus, the DEA training academy's "surrounding circumstances, expectations, and relationships" differ substantially from a traditional office setting. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) (emphasizing that the "objective severity of [the alleged conduct] should be judged from the perspective of a reasonable person in the plaintiff's position"). Considering the totality of the circumstances—the callous behavior and perhaps unfair scrutiny that DEA supervisors directed at Plaintiff in the context of a law enforcement training academy—Plaintiff's hostile work environment claim must be dismissed because the Complaint does not allege that DEA supervisors treated Plaintiff with "objective severity" because of her protected classes, as is required to state a hostile work environment claim.

## IV. CONCLUSION

For the above reasons, Defendant's Motion to Dismiss (Dkt. 54) is **DENIED** as to Plaintiff's disparate treatment claim on the bases of color, sex, and national origin and is

**GRANTED** as to Plaintiff's hostile work environment claim on the bases of color, sex, and national origin.

    A separate Order will issue alongside this Memorandum Opinion.

Entered this 19th day of July, 2023
Alexandria, Virginia

/s/ Patricia Tolliver Giles
Patricia Tolliver Giles
U.S. District Judge